**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN RE APPLICATION OF PALANTIR
TECHNOLOGIES INC. FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 TO
OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS

Case: 1:22–mc–00047
Assigned To : Kollar–Kotelly, Colleen
Assign. Date : 5/4/2022
Description: Misc.

Civil Action No.

**PALANTIR TECHNOLOGIES INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS
APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**
601 Lexington Avenue, 31st Floor
New York, New York 10022
Tel: (212) 277-4000
Fax: (212) 277-4001

*Attorneys for Applicant
Palantir Technologies Inc.*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................... 5

        A.      The Parties ............................................................................................ 5

        B.      Abramowitz Misappropriates Palantir's Confidential Information and
                Seeks to Patent Palantir's Inventions as His Own ................................ 6

        C.      Palantir Defends Its Intellectual Property ............................................ 7

        D.      Palantir Commences the German Patent Litigation and Brings Its First
                Application Pursuant to Section 1782 ..................................................... 7

        E.      Abramowitz Waives Privilege ............................................................... 8

        F.      Abramowitz Asserts Specific Recollections of the June 10 Meeting in
                Multiple Submissions to the German Court Despite Claiming to Have No
                Recollection in Testimony in the United States ..................................... 9

        G.      Palantir Brings Application for Discovery to Obtain the Delaware
                Deposition for Use in Germany ............................................................ 10

        H.      Testifying Under the Threat of Immediate Arrest, Abramowitz Invokes
                Williams & Connolly's Advice When Questioned by the German Court
                Regarding His Inconsistent Statements ................................................ 12

        I.      Abramowitz Challenges the Default Judgment ................................... 13

        J.      The German Court Concludes Abramowitz Committed a Crime and
                Refers the Matter to Law Enforcement ............................................... 15

        K.      Forthcoming Court Proceedings in Germany ...................................... 15

III.    REQUESTED DISCOVERY ............................................................................ 16

IV.     ARGUMENT .................................................................................................... 17

        A.      Palantir's Application Meets the Section 1782 Requirements ............ 18

                1.      Palantir Is an "Interested Person" ........................................... 18

                2.      The Evidence Is for Use in a Foreign Proceeding .................. 19

                3.      The Discovery Subjects Are Located in the District of Columbia .......... 20

        B.      The Intel Discretionary Factors Strongly Favor Granting Discovery ................. 20

                1.      The German Court and German Prosecutor May Not Compel
                        Discovery of Evidence in the United States ............................ 20

                2.      The German Court and German Prosecutor Are Not Hostile to
                        Section 1782 Discovery ........................................................... 22

                3.      The Application Has Not Been Filed to Circumvent Any Law or
                        Rule ......................................................................................... 23

        4.     The Discovery Requests Are Not Unduly Intrusive or Burdensome....... 23

C.     The Discovery Is Not Protected By Privilege ...................................................... 24

        1.     Abramowitz Has Waived Privilege ............................................. 24

        2.     The Crime Fraud Exception Warrants Discovery................................... 27

V.    CONCLUSION............................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

Conkling v. Turner,
   883 F.2d 431 (5th Cir. 1989) ................................................................................... 27

Consorcio Minero S.A. v. Doe Run Res. Corp.,
   No. 4:11-MC-583 CEJ, 2011 WL 4550200 (E.D. Mo. Sept. 30, 2011) ................................ 21

Duttle v. Bandler & Kass,
   127 F.R.D. 46 (S.D.N.Y. 1989) ................................................................................ 29

Food Delivery Holding 12 S.a.r.l. v. DeWitty & Assocs. CHTD,
   538 F. Supp. 3d 21 (D.D.C. 2021) ....................................................................... 22, 24

*Heraeus Kulzer, GmbH v. Biomet, Inc.,
   633 F.3d 591 (7th Cir. 2011) ............................................................................. 21, 22

In re Barnwell Enters. Ltd,
   265 F. Supp. 3d 1 (D.D.C. 2017) ........................................................................ 17, 18

In re DiGiulian,
   314 F. Supp. 3d 1 (D.D.C. 2018) .............................................................................. 23

*In re DiGiulian,
   No. 1:19-mc-132 (RC/RMM), 2020 WL 5253849 (D.D.C. Sept. 3, 2020) ..................... 22, 23

In re Eurasian Bank JSC,
   No. 19-mc-00568, 2020 WL 85226 (S.D.N.Y. Jan. 2, 2020) ................................... 19

In re Int'l Min. Res. B.V.,
   No. 14-mc-340 (GK), 2015 WL 4555248 (D.D.C. July 28, 2015) ................................ 27, 28

In re Palantir Techs. Inc.,
   No. 1:22-mc-00062-PAB-NRN (D. Colo. Apr. 6, 2022) ........................................ 4

*In re Sealed Case,
   676 F.2d 793 (D.C. Cir. 1982) .......................................................................... 26, 27

*In re Sealed Case,
   754 F.2d 395 (D.C. Cir. 1985) .......................................................................... 27, 28

In re Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais,
   No. C13-80261-MISC LHK (HRL), 2013 WL 12440994 (N.D. Cal. Nov. 21,
   2013) .............................................................................................................. 22

*In re Veiga,
   746 F. Supp. 2d 8 (D.D.C. 2010) ...................................................................... 19, 20

*Intel Corp. v. Advanced Micro Devices, Inc.,
    542 U.S. 241 (2004)................................................................................ *passim*

Intex Recreation Corp. v. Metalast, S.A.,
    No. CIVA 01-1213 JDB, 2005 WL 5099032 (D.D.C. Mar. 2, 2005) .................................... 26

Kulzer GmbH v. Esschem, Inc.,
    390 F. App'x 88 (3d Cir. 2010) ................................................................................. 21

Lazaridis v. Int'l Ctr. for Missing & Exploited Child., Inc.,
    760 F. Supp. 2d 109 (D.D.C. 2011) ........................................................................... 19

*Matter of de Leon,
    No. 19-mc-0197 (TSC), 2020 WL 1047742 (D.D.C. Mar. 4, 2020) .................................... 23

*Optimal Inv. Servs., S.A. v. Berlamont,
    773 F.3d 456 (2d Cir. 2014)..................................................................................... 19

*Palantir Techs., Inc. v. Abramowitz,
    415 F. Supp. 3d 907 (N.D. Cal. 2019) ................................................................ 7, 8, 18, 21

Recycling Sols., Inc. v. District of Columbia,
    175 F.R.D. 407 (D.D.C. 1997).................................................................................. 27

United States v. Beech-Nut Nutrition Corp.,
    677 F. Supp. 117 (E.D.N.Y. 1987) ............................................................................ 13

Williams & Connolly, L.L.P. v. People for the Ethical Treatment of Animals, Inc.,
    643 S.E.2d 136 (Va. 2007)...................................................................................... 13

**Statutes**

28 U.S.C. § 1782................................................................................................. *passim*

**Other Authorities**

6 MOORE'S FEDERAL PRACTICE § 26.47 (Matthew Bender 3d ed.)............................................ 27

## I.      PRELIMINARY STATEMENT

Through this Application, Palantir Technologies Inc. seeks limited discovery, pursuant to 28 U.S.C. § 1782, from Williams & Connolly LLP, Barry S. Simon, Esq., and Stephen L. Wohlgemuth, Esq. (together, "Williams & Connolly") in aid of two German proceedings: (i) a patent entitlement litigation before the Regional Court of Munich, Federal Republic of Germany (the "German Court") between Palantir and Williams & Connolly's client, Marc L. Abramowitz (the "German Patent Litigation"), and (ii) a criminal investigation by a German public prosecutor of Abramowitz, Simon, and Wohlgemuth (the "Criminal Investigation," and along with the German Patent Litigation, the "German Proceedings").   The present focus of both German Proceedings is the truthfulness of representations made to the German Court by Abramowitz, in reliance on advice from, and communications involving, Williams & Connolly.

In short, the underlying dispute between Abramowitz and Palantir in Germany concerns the parties' respective entitlement to certain patents Abramowitz filed in Germany.  The proceeding before the German Court revealed that representations made by Abramowitz in briefs which he submitted to the German Court were irreconcilably different from Abramowitz's sworn testimony in a deposition that he gave in a Delaware litigation between himself and Palantir (the "Delaware Deposition").   As a result, the German Court concluded that Abramowitz had committed the crime of "attempted litigation fraud," a criminal offense under German law that is in the present case punishable by imprisonment of up to ten years.  The Munich prosecutors are currently considering charges against Abramowitz and his U.S. lawyers Simon and Wohlgemuth.

Abramowitz's conflicting testimony concerned a central issue in the German case: whether Abramowitz received Palantir's confidential information during a meeting on June 10, 2014, between Abramowitz and a Palantir employee (the "June 10 Meeting").  For years, both before and after the Delaware Deposition, Abramowitz submitted briefs to the German Court

asserting that he recalled the June 10 Meeting in detail and that he did not receive certain Palantir technical information during that meeting.  In the Delaware Deposition, however, Abramowitz testified that he did not recall the June 10 Meeting at all.  In other words, Abramowitz testified to one thing under oath in the United States while telling the German Court precisely the opposite. Abramowitz's contradictory U.S. testimony only came to light in Germany because Palantir's German counsel obtained the transcript of the Delaware Deposition through Section 1782 discovery after Abramowitz refused to produce it voluntarily.

Days after Abramowitz was forced to produce the Delaware Deposition transcript to Palantir's German counsel, he abruptly changed his story to the German Court.  During a hearing on October 21, 2021, Abramowitz's German counsel informed the German Court that he had just learned that Abramowitz did not recall the June 10 Meeting, a story which was diametrically opposite and irreconcilably different from Abramowitz's prior submissions to the German Court. Asked to explain whether he had approved the prior apparently false statements in his German briefs, Abramowitz answered yes, claiming, though, that he had done so only "[a]fter consult[ing] with my U.S. attorneys" from Williams & Connolly.  Unambiguously putting his communications with counsel at issue, Abramowitz continued: "I relied on my US lawyers, as they know the facts."

The German Court found Abramowitz's testimony "evasive[]."  Ultimately, the German Court entered a default judgment against Abramowitz.  Several weeks later, after Abramowitz objected to the entry of the default judgment, the German Court went further, issuing an order in which it "conclud[ed]" that Abramowitz's conduct in Germany constituted the crime of attempted litigation fraud.  The German Court filed a criminal complaint, referring the matter to the Munich Public Prosecutor's Office for further proceedings.  Separately, Palantir filed its

own criminal complaint in Germany against both Abramowitz and his Williams & Connolly attorneys.

Seeking to justify his conduct in the German Patent Litigation, Abramowitz has tried a variety of ever-shifting explanations.  At the October 2021 hearing, he testified that he "relied" on Williams & Connolly, the lawyers who "know the facts."  Then, in December 2021, he suggested that his inconsistent statements were the result of translation errors in the drafts he and his counsel reviewed.  Most recently, on March 28, 2022, five months after the October hearing, Abramowitz claimed that his representations to the German Court were the result of error by his German counsel which, Abramowitz suggested, Williams & Connolly had tried to correct.

Through this Application, Palantir seeks discovery to test Abramowitz's assertions in the pending German Proceedings, which include: (i) the German Patent Litigation, in which Abramowitz is challenging the imposition of the default judgment and in which an evidentiary hearing is scheduled on July 13, 2022, and (ii) the public prosecutor's Criminal Investigation of Abramowitz and his U.S. counsel.  In addition, Palantir soon will extend its complaint in the German Patent Litigation to seek damages arising from Abramowitz's untruthful statements to the German Court in violation of the German Civil Code.

Important to each of these German Proceedings is the credibility of Abramowitz's explanations for his inconsistent statements and the involvement of his American attorneys.  For example, did Abramowitz and/or Williams & Connolly really inform Abramowitz's German counsel in writing that Abramowitz lacked recollection of the June 10 Meeting—as they asserted for the first time on March 28, five months after German counsel told the German Court he had been unaware that Abramowitz lacked a recollection?  With respect to Abramowitz's testimony that he "relied on [his] US lawyers," how could Abramowitz's consultations with Williams &

3

Connolly have justified submitting briefs that the German Court concluded were evidence of an attempted crime?  Do the circumstances, including the relevant facts known to Abramowitz and Williams & Connolly, really justify the submissions, or do they reflect an attempt to defraud the German Court about an outcome-determinative issue?  As explained below, the answers to these questions may determine the results of Abramowitz's bid to overturn the default judgment against him and the extent of his criminal liability for attempted litigation fraud.  Thus, the evidence Palantir seeks regarding these matters is highly relevant to the German Proceedings.

To obtain materials providing answers to these questions, Palantir requests discovery of Williams & Connolly's communications with Abramowitz and/or with his German counsel concerning (i) the relevant parts of Abramowitz's submissions in Germany (including any translations), (ii) Abramowitz's deposition testimony concerning the June 10 Meeting, and (iii) Abramowitz's recollection, or lack thereof, concerning the June 10 Meeting.[1]

This Application meets the statutory requirements for discovery pursuant to Section 1782: as the plaintiff and the complainant in the German Proceedings, Palantir is an "interested person" in those proceedings, the requested discovery is for use in foreign proceedings, and the Respondents are found in this district.  The discretionary factors set out by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264–65 (2004) also favor this Court granting the requested discovery.  The German Court and the public prosecutor cannot compel the

---

[1]     Palantir has filed an application under Section 1782 in the United States District Court for the District of Colorado seeking discovery directly from Abramowitz of materials related to his statements to the German Court concerning the June 10 Meeting.  In re Palantir Techs. Inc., No. 1:22-mc-00062-PAB-NRN (D. Colo. Apr. 6, 2022).  Through this Application, Palantir seeks the deposition of Simon and Wohlgemuth, who are not found in the District of Colorado, and the production of documents found in the files of Williams & Connolly that may otherwise be deemed to be outside the scope of the Colorado application.

Respondents to submit documents and testimony.  The German Court has already accepted Section 1782 evidence, and thus is receptive to U.S. judicial assistance.  And the requested discovery is narrow, highly relevant, and necessary for a fair and just resolution of the German Proceedings. Furthermore, Abramowitz put his communications with counsel concerning the June 10 Meeting at issue in the German Patent Litigation, and thereby clearly waived any attorney-client privilege that otherwise would attach to these communications.  In addition, the German Court's conclusion that Abramowitz engaged in criminal conduct, and the public prosecutor's conclusion that the evidence of misconduct was sufficiently strong to initiate a criminal investigation, justify the piercing of any otherwise applicable privilege based on the crime-fraud exception.  For these reasons and those detailed below, Williams & Connolly, Simon, and Wohlgemuth should be compelled to produce the documents and testimony relevant to Abramowitz's inconsistent statements about the June 10 Meeting and his asserted defenses and explanations for those statements.

## II.      FACTUAL BACKGROUND

### A.      The Parties

Palantir Technologies Inc. is headquartered in Denver, Colorado.  It was founded in 2003 and has devoted many years to the development, testing, and invention of a wide variety of systems for processing and analyzing data.

The targets of the requested discovery are Williams & Connolly LLP, Barry S. Simon and Stephen L. Wohlgemuth, counsel to Marc L. Abramowitz.  Williams & Connolly is a law firm headquartered in Washington, D.C.  Simon and Wohlgemuth, attorneys at Williams & Connolly, have represented Abramowitz for years, including in connection with the Delaware Deposition and the German Patent Litigation.  See Declaration of Wolrad Prinz zu Waldeck und Pyrmont (Apr. 25, 2022) ("Waldeck Decl."), ¶ 16.

**B.      Abramowitz Misappropriates Palantir's Confidential Information and Seeks to Patent Palantir's Inventions as His Own**

The underlying dispute is about Abramowitz's theft of Palantir's proprietary information.  Since becoming an early investor in Palantir, Abramowitz positioned himself as a trusted advisor to Palantir and its management, enjoying its full confidence.  In this context, Abramowitz engaged in regular discussions with Palantir's senior management and employees about the company's most sensitive business strategies and trade secrets.  See Waldeck Decl., Ex. 11, at 1 ("German Court's Criminal Complaint"); Declaration of Simone Kämpfer (Apr. 22, 2022) ("Kämpfer Decl."), Ex. 1, at 5 ("Palantir's Criminal Complaint"); Waldeck Decl., Ex. 1, at 5–6 ("Patent Complaint").  As relevant here, on June 10, 2014, Abramowitz attended an in-person meeting with Shyam Sankar, a Palantir employee.  During that meeting, Sankar described to Abramowitz key aspects of cyber inventions that Palantir developed.  See Patent Complaint at 19; German Court's Criminal Complaint at 1; Palantir's Criminal Complaint at 5–6.

Following the June 10 Meeting, Abramowitz used the information Palantir provided him to submit patent applications, in his sole name, based on the cyber-security and cyber-insurance inventions developed by Palantir.  See Patent Complaint at 19.  More specifically, Abramowitz filed applications for two European patents (the "Cyber Patents"), which concern technologies invented by Palantir to assist with the efficient detection, defense, and prevention of cyber attacks, as well as the risk-assessment and provision of insurance against such attacks.  See id. at 3, 7–8.  While Abramowitz's applications claim that he is solely responsible for the technological innovation underlying the Cyber Patents, the patents are based on proprietary information Abramowitz stole from Palantir.

6

C.     **Palantir Defends Its Intellectual Property**

When Palantir discovered Abramowitz's betrayal, it took steps to protect its inventions.  Among other things, Palantir brought interference proceedings before the U.S. Patent and Trademark Office and an action in California seeking damages for Abramowitz's misappropriation of Palantir's trade secrets.  Separately, Abramowitz commenced litigation in Delaware, allegedly seeking to vindicate his rights as Palantir's shareholder (the "Delaware Action"), and a contract claim in California.  Williams & Connolly has represented Abramowitz and affiliated entities in the California and Delaware litigations.  These actions are all ongoing.

D.     **Palantir Commences the German Patent Litigation and Brings Its First Application Pursuant to Section 1782**

To protect its intellectual property in Europe, on August 6, 2018, Palantir brought an action before the German Court, seeking, <u>inter alia</u>, a declaration that (i) Abramowitz was not entitled to file the Cyber Patents, and that (ii) it is Palantir, not Abramowitz, that is entitled to patent and profit from the discoveries underlying the Cyber Patents.  Until recently, Abramowitz was represented by the German law firm Hoffmann Eitle in the German Patent Litigation,[2] with Williams & Connolly acting as special correspondence counsel.  <u>See</u> Waldeck Decl., ¶ 16.

Shortly after initiating the German Patent Litigation, Palantir sought discovery from the United States District Court for the Northern District of California (the "California Court") pursuant to 28 U.S.C. § 1782 for use in Germany.  <u>See</u> <u>Palantir Techs., Inc. v. Abramowitz</u>, 415 F. Supp. 3d 907 (N.D. Cal. 2019).  The discovery sought pertained to, <u>inter alia</u>, Abramowitz's knowledge and understanding of the technology underlying the Cyber Patents, his communications

---

[2]     At some point after the October 2021 hearing, Abramowitz replaced Hoffmann Eitle with Skadden, Arps, Slate, Meagher & Flom LLP as his counsel in the German Patent Litigation and thereafter submitted his March 28, 2022 submission to the German Court.  <u>See</u> <u>infra</u> at 14.

about that technology, and documents on which he intended to rely to support his entitlement to the Cyber Patents.  Id. at 909–10.  Palantir's application was granted on November 22, 2019.  Id. at 907.  Since the application was granted, Abramowitz has produced documents that have been submitted to the German Court.  See Waldeck Decl., ¶ 47.

E.      **Abramowitz Waives Privilege**

Throughout the course of the German Patent Litigation, Abramowitz has attempted to deploy the attorney-client privilege as a sword and a shield, presenting select privileged communications to the German Court while seeking to deny Palantir access to the full scope of his communications on the subjects at hand.  See Declaration of David Y. Livshiz (May 4, 2022) ("Livshiz Decl."), Ex. 6, at 2 ("California Court Apr. 1, 2022 Order") ("[T]here is a history in this case of [Abramowitz] selectively waiving the privilege to his own advantage."); id., Ex. 5, at 2–3 ("California Court Nov. 10, 2020 Order").  For example, in defending against Palantir's claims in Germany, Abramowitz asserted that he developed the technologies underlying the Cyber Patents with the assistance of his patent attorney John Squires.  Attempting to prove this point, Abramowitz selectively referenced and then disclosed privileged communications with Squires, and proffered Squires as a witness in the German Patent Litigation.  Livshiz Decl., Ex. 4, at 3–4 ("California Court Sept. 11, 2020 Order"); California Court Nov. 10, 2020 Order at 2.  But while relying on his counsel's testimony, Abramowitz invoked attorney-client privilege to shield from Palantir the rest of his communications with Squires on this subject.  Palantir sought judicial intervention, and the California Court twice ruled that Abramowitz had waived privilege over protected information under the sword-shield doctrine.  California Court Sept. 11, 2020 Order at 3–4; California Court Nov. 10, 2020 Order at 2–3 (critiquing Abramowitz's "blatant

gamesmanship" in "intentionally" "disclos[ing privileged] emails that support his defense, but withhold[ing related] emails . . . on grounds of attorney-client privilege").[3]

### F. Abramowitz Asserts Specific Recollections of the June 10 Meeting in Multiple Submissions to the German Court Despite Claiming to Have No Recollection in Testimony in the United States

The June 10 Meeting between Abramowitz and Sankar is "decisive for the outcome" of Palantir's claim in Germany, German Court's Criminal Complaint at 2, as it was at that meeting—among others—that Abramowitz learned about Palantir's inventions underlying the Cyber Patents.  To demonstrate these communications, Palantir proffered Sankar's testimony about the meeting.  Because the conversation was a "four eye" conversation—taking place between two individuals—only Abramowitz and Sankar could offer testimony as to what took place.  See Waldeck Decl., ¶¶ 9, 11.

Abramowitz therefore had every incentive to inform the German Court that he recalled the June 10 Meeting.  Abramowitz did so.  Repeatedly.  In filings submitted by his German counsel that Abramowitz reviewed and approved with the assistance of Williams & Connolly, he claimed to have a recollection of the June 10 Meeting, discussing it in detail.  See, e.g., Waldeck Decl., Ex. 2 (Abramowitz's Nov. 20, 2019 Response to the Complaint), ¶ 137 ("The unsubstantiated assertions" "that in this meeting Mr. Sankar also explained 'all of the aspects later incorporated by [Abramowitz] into the Applications in Suit' . . . are incorrect and are denied." (emphasis in original)); id., Ex. 3 (Abramowitz's Aug. 7, 2020 Rejoinder), ¶¶ 131, 133 ("this discussion . . . took approximately one hour and undisputedly dealt with other topics as well" and

---

[3]    More recently, the California Court conducted an *in camera* review and found that Abramowitz had improperly withheld documents over which he waived privilege.  See California Court Apr. 1, 2022 Order at 2; Livshiz Decl., Ex. 7 ("California Court Apr. 18, 2022 Order").

"den[ying] that details of the Applications in Suit were communicated to him in this discussion" (emphasis in original)).

The topic of the June 10 Meeting also came up in the Delaware Action, where Williams & Connolly is, again, representing Abramowitz. There, unbeknownst to Palantir's German counsel and acting under the protection afforded by a protective order, Abramowitz testified under oath in the October 1, 2020 deposition that "he did not remember the meeting on 10 June 2014, which he confirmed several times during his deposition (upon incredulous inquiry, apparently)." German Court's Criminal Complaint at 2 (emphasis in original); see also Livshiz Decl., Ex. 8, ¶ 4 ("Delaware Motion in Limine") (claiming that "Abramowitz has consistently testified . . . that he does not remember any such meeting"). Five days later, on October 6, 2020, Hoffmann Eitle submitted Abramowitz's next brief in the German Patent Litigation, stating the exact opposite: "According to Defendant's recollection in particular technical aspects were not mentioned in the conversation [during the June 10 Meeting]." Waldeck Decl., Ex. 4 (Abramowitz's Oct. 6, 2020 Quadruplica), ¶ 56 (emphasis added). Abramowitz even listed for the German Court ten specific statements about the inventions that Sankar purportedly did not make during the June 10 Meeting, insisting that he was "consistent in his recollection." Id., ¶¶ 57–58.

Thus, Abramowitz testified to one thing under oath in Delaware, while telling the German Court precisely the opposite both before and after the Delaware Deposition. Williams & Connolly plays a central role in both disputes, and would necessarily have been included in the communications concerning these irreconcilable factual representations.

**G.   Palantir Brings Application for Discovery to Obtain the Delaware Deposition for Use in Germany**

Faced with conflicting representations by Palantir and Abramowitz concerning, inter alia, the June 10 Meeting, the German Court issued an order to "take evidence" on several

topics, including Abramowitz's "recollections of the conversation on 10 June 2014" (the "Evidentiary Hearing").  German Court's Criminal Complaint at 1; see also Waldeck Decl., Ex. 6 (Annex 1 to the German Court's Indicative Order and Order to Take Evidence), at 6–7; id., Ex. 5 (Summons), at 1.

As the Evidentiary Hearing approached, Palantir's German counsel asked to review Abramowitz's deposition transcript in the Delaware Action.  Abramowitz declined, citing confidentiality requirements in the Delaware Action.  Faced with this obfuscation, Palantir sought the deposition transcript by filing a Section 1782 application in the United States District Court for the District of Colorado, where Abramowitz resides.  See Livshiz Decl., Ex. 9 ("First Colorado 1782 Action").  Understanding that the court would order him to produce the transcript, Abramowitz agreed to produce it, subject to a protective order restraining Palantir's ability to use it only in the German Proceedings and the First Colorado 1782 Action itself.  Id., Ex. 10 (Colorado Protective Order).  The court entered the parties' agreement as a stipulated order.  Id. at 10.[4]

Thus, one week before the Evidentiary Hearing, Palantir finally obtained the right to use the transcript of Abramowitz's Delaware Deposition in Germany.  It was upon receiving Abramowitz's deposition transcript on the night of October 18 that Palantir's German counsel first became aware of the contradiction between Abramowitz's representations to the German Court and his Delaware testimony.  Waldeck Decl., ¶ 13.

---

[4]     That order limits the transcript's use to proceedings in Germany and the Colorado 1782 proceedings.  Consequently, at present, Palantir cannot exhibit the transcript in this proceeding, absent an order from this Court directing it to do so.

**H.    Testifying Under the Threat of Immediate Arrest, Abramowitz Invokes Williams & Connolly's Advice When Questioned by the German Court Regarding His Inconsistent Statements**

At the start of the Evidentiary Hearing, the German Court noted that "irreconcilable statements by the parties are at issue" and warned that it was ready to "initiate the necessary measures" "in the event of a criminal offence being committed . . . such as . . . an attempted trial fraud."   Waldeck Decl., Ex. 7, at 3 ("Hearing Minutes").   Under the German Criminal Code, litigation fraud involves "deceiving the court about facts relevant to the judgement with the aim of obtaining a more favorable decision with financial advantages."   Kämpfer Decl., ¶ 8.   Having received the warning, and aware that Palantir's German counsel then knew of Abramowitz's inconsistent statements about the June 10 Meeting, Abramowitz's German counsel asserted that he had, "in the last few days," learned "that Mr. Abramowitz did <u>not</u> remember [the June 10 Meeting] and therefore could not make any statement on the content of the conversation."   Hearing Minutes at 3 (emphasis added).

Abramowitz's German counsel then attempted to reconcile the statements in Abramowitz's submissions to the German Court with his sworn deposition testimony.   But the German Court expressly rejected these attempts to reconcile Abramowitz's contradictory representations, explaining that it was "impossible" to do so.   Waldeck Decl., ¶ 18.   It demanded that Abramowitz explain his knowledge of the inconsistent statements in his German briefs and the Delaware Deposition.   Testifying under oath and the threat of immediate arrest, Abramowitz confirmed that he had reviewed the draft submissions to the German Court professing his exact recollection of the June 10 Meeting: "<u>After consult[ing] with my U.S. attorneys</u> [Simon and Wohlgemuth], I have approved the pleadings as being correct. . . . I relied on my US lawyers, as they know the facts."   Hearing Minutes at 4 (emphasis added).   The German Court was unconvinced by Abramowitz's explanations for his inconsistent statements, and specifically

memorialized its impression that the testimony was "evasive[]." Waldeck Decl., Ex. 9 (German Court's Oct. 21, 2021 Memorandum and Note of Recollection), at 1. As discussed above, Simon and Wohlgemuth also represent Abramowitz in the Delaware Action and were present at the Delaware Deposition. They were, accordingly, aware that Abramowitz's Delaware testimony contradicted Abramowitz's representations to the German Court. Palantir's Criminal Complaint at 10.[5]

## I.    Abramowitz Challenges the Default Judgment

After the Evidentiary Hearing, the German Court entered a default judgment against Abramowitz, as Abramowitz elected not to file a motion to dismiss. See Waldeck Decl., Ex. 8 ("Default Judgment"). Abramowitz has challenged the Default Judgment. In so doing, he argues that he had no memory of the June 10 Meeting, but does not retract his former affirmative

---

[5]    This is not the first time that courts have critiqued Simon for making misleading statements in court papers and proceedings, including going so far as to revoke his *pro hac vice* admission in a decision affirmed by the Virginia Supreme Court. See Williams & Connolly, L.L.P. v. People for the Ethical Treatment of Animals, Inc., 643 S.E.2d 136, 142, 145 (Va. 2007) (affirming revocation of Simon's *pro hac vice* admission, noting that he filed motions relying on "inaccurate" facts and "speculation," and that "reasonable inquiry on [Simon's] part would have shown that there was no basis" for his assertions); id. at 146 (quoting the Virginia Circuit Court stating "the things that are in [Simon's] motion, some of them didn't even happen, and the rest of them were either twisted or distorted in a manner that I found to be highly inappropriate"); Livshiz Decl., Ex. 11 (Ruling on Forbes' Retrial Motion No. 12, United States v. Forbes, No. 3:02-cr-00264-AWT (D. Conn. Oct. 28, 2005)), at 1 ("Based on the court's experiences in this case (see, e.g., . . . Statement in Response to the Court's Comments Regarding Forbes Trial Motion No. 22 . . . ), the court is not comfortable relying on representations of counsel for defendant Forbes [including Simon] where counsel for the parties and/or non-parties whose interests are adverse to those of defendant Forbes have not had an opportunity to review and/or respond to those representations." (citing id., Ex. 12 (Statement in Response to the Court's Comments Regarding Forbes Trial Motion No. 22, United States v. Forbes, No. 3:02-cr-00264-AWT (D. Conn. July 27, 2004)))); United States v. Beech-Nut Nutrition Corp., 677 F. Supp. 117, 118 (E.D.N.Y. 1987) ("[N]otwithstanding some defense counsels' [including Simon's] apparent belief to the contrary, the Act does not relieve them of their obligations as officers of the Court not to make misrepresentations to the Court on one day and attempt to deny the same on a later day. . . .").

statements that he did not discuss the cyber technologies during the June 10 Meeting.  Id., Ex. 10, ¶¶ 45, 109–10 ("Objection").  Apparently concerned that Palantir would try to use the Default Judgment in a then-scheduled forthcoming trial in the Delaware Action, Abramowitz moved to exclude it.  See Delaware Motion in Limine.  In his Delaware Motion in Limine, Abramowitz repeated the same assertions about his recollection of the June 10 Meeting that he had made in the Objection he had filed 33 days earlier in Germany, while also suggesting that his statements to the German Court were the result of the briefs being "reviewed in translation" (an argument he did not make in Germany).  Id., ¶ 4 n.1.

Five months after the October hearing, on March 28, 2022, Abramowitz filed a new submission in Germany, offering a new excuse: the lawyer did it.  That is, Abramowitz now argues that he and his Williams & Connolly lawyers had, all along, informed German counsel that Abramowitz did not recall the June 10 Meeting, and that German counsel misrepresented what Abramowitz and Williams & Connolly told them.  Waldeck Decl., Ex. 13, ¶ 4 ("Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief").  While Abramowitz tries to excuse what he now contends were incorrect statements in his German Court filings, which he approved, by invoking alleged miscommunications between his German counsel and Williams & Connolly, Abramowitz has not presented the correspondence on which his asserted defense relies to the German Court. See id.  Nor do Abramowitz's recent papers explain why it took five months for his German counsel to realize that he had made such a consequential and important mistake (telling the German Court the opposite of what Abramowitz and Williams & Connolly supposedly were telling German counsel) repeatedly, in numerous briefs to the German Court, or why the Williams & Connolly lawyers—who Abramowitz testified had reviewed his German briefs in 2020—did not ensure that the briefs accurately reflected Abramowitz's recollection concerning the June 10 Meeting.

**J.      The German Court Concludes Abramowitz Committed a Crime and Refers the Matter to Law Enforcement**

After it had a chance to review Abramowitz's Objection and Delaware Motion in Limine, on December 15, 2021, the German Court took the unusual step of issuing an order that "conclud[ed]" that Abramowitz committed "attempted litigation fraud[,]" and referred the case to the Munich Public Prosecutor's Office for further action.  German Court's Criminal Complaint at 2–3; Kämpfer Decl., ¶ 13.  The German Court found that Abramowitz attempted to "induce the Chamber to make a decision in his favour (dismissal of the action) . . . [through] his allegedly concrete recollections of the [June 10 Meeting]," but that this attempt to mislead the German Court failed when he could no longer hold to that story because Palantir had obtained his contradictory testimony in the Delaware Action.  German Court's Criminal Complaint at 3.  The German Court expressly determined that this conduct constituted a crime of attempted litigation fraud.  Id.

Separately, Palantir filed its own criminal complaint on November 2, 2021, alleging that Abramowitz, Simon, and Wohlgemuth had committed crimes under the German Criminal Code.  See Palantir's Criminal Complaint at 1–2; Kämpfer Decl., ¶ 7.

After reviewing Palantir's Criminal Complaint and the criminal referral from the German Court, German law enforcement authorities have concluded that there is sufficient evidence to proceed with an official investigation.  Kämpfer Decl., ¶ 11.

**K.      Forthcoming Court Proceedings in Germany**

After reviewing Abramowitz's Objection, the German Court scheduled a hearing for July 13, 2022 to evaluate Abramowitz's explanation of the inconsistent statements he and his attorneys have submitted to the court, and whether their new claims about Abramowitz's recollection of the June 10 Meeting are credible.  Waldeck Decl., ¶ 32.  If the German Court concludes that the claims are not credible, it will affirm the Default Judgment.  Id., ¶ 33.

15

Meanwhile, Palantir is preparing an extension of its complaint in the German Patent Litigation to seek damages resulting from Abramowitz's untruthful statements to the German Court in violation of the German Civil Code.  Id., ¶¶ 34–35.  Those damages include, among others, the costs of summoning numerous Palantir witnesses to Germany for the Evidentiary Hearing who might not have been summoned had Abramowitz been truthful in his written submissions to the German Court.  Id.  Separately, the Criminal Investigation into Abramowitz's conduct is ongoing.  Kämpfer Decl., ¶ 7.

## III.    REQUESTED DISCOVERY

As set out in more detail in the proposed subpoenas attached as Exhibits 1, 2 and 3 to the Declaration of David Y. Livshiz, Palantir seeks discovery related to the core subjects at issue in the German Proceedings: Abramowitz's asserted defenses to the claim of attempted litigation fraud that he reviewed his German Court filings concerning the June 10 Meeting with Williams & Connolly and approved those filings in reliance on Williams & Connolly's counsel, see Hearing Minutes at 4, and that he and Williams & Connolly told German counsel that Abramowitz did not remember the June 10 Meeting but German counsel nevertheless asserted the opposite to the German Court.  More specifically, Palantir seeks the depositions of Simon and Wohlgemuth, as well as Williams & Connolly's communications with Abramowitz and with Hoffmann Eitle (to the extent they may be deemed outside the scope of the Colorado 1782 application) concerning (i) the relevant parts of Abramowitz's submissions in Germany (including any translations), (ii) his deposition testimony concerning the June 10 Meeting, and (iii) Abramowitz's recollection, or lack thereof, concerning the June 10 Meeting.

Because the document discovery at issue includes correspondence with counsel and draft documents, Palantir is limiting its discovery requests to information that Abramowitz put at issue by (i) asserting "I relied on my US lawyers" in response to the German Court's questions

about his inconsistent statements, see Hearing Minutes at 4; (ii) suggesting that his statements to the German Court resulted from translation errors in communications among himself and his U.S. and German counsel, Delaware Motion in Limine, ¶ 4 n.1; and (iii) most recently, asserting that he and Williams & Connolly informed his German counsel that he did not remember the June 10 Meeting, despite German counsel's contrary submissions on his behalf to the German Court. Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief, ¶ 4.  These matters are all directly related to Abramowitz's conduct that the German Court has described as criminal and fraudulent, Abramowitz's explanations for such conduct, and Williams & Connolly's oversight of that conduct and those explanations.  Palantir seeks correspondence concerning only the relevant paragraphs of Abramowitz's submissions in Germany, not the submissions as a whole.  Livshiz Decl., Ex. 1; id., Ex. 2; id., Ex. 3.

## IV.    ARGUMENT

Section 1782 allows a litigant in foreign proceedings to seek a "broad range of discovery" to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful."  Intel, 542 U.S. at 259, 262.  To be eligible for discovery under the statute, an applicant must demonstrate: (i) that the request is made by an interested person, (ii) that the evidence sought is for use in a proceeding before a foreign or international tribunal, and (iii) that the person from whom discovery is sought is a resident in the district of the court receiving the application.  Id. at 246; In re Barnwell Enters. Ltd, 265 F. Supp. 3d 1, 8–9 (D.D.C. 2017).

Once Palantir establishes the statutory requirements, this Court has discretion to grant the application based on certain equitable considerations, including: (i) whether the discovery sought is within the jurisdiction of the foreign proceeding, (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section

1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions," and (iv) whether the request is otherwise unduly burdensome.  See Intel, 542 U.S. at 264–65.

Further, district courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: "to (1) provide efficient means of assistance to participants in international litigation and (2) encourage foreign countries by example to provide similar means of assistance to our courts."  Barnwell, 265 F. Supp. 3d at 9 (citations omitted); see also Intel, 542 U.S. at 252 (citations omitted).

Such an exercise of discretion is particularly warranted here, where Abramowitz, with the aid of Williams & Connolly, has already sought to capitalize on the unavailability of evidence abroad to make fraudulent statements to the German Court—conduct which only came to light in Germany because Palantir introduced evidence obtained under Section 1782.

### A.      Palantir's Application Meets the Section 1782 Requirements

Palantir satisfies the three statutory requirements: Palantir is an "interested person" in the German Proceedings, which are foreign proceedings within the meaning of Section 1782, and through this Application Palantir seeks evidence from discovery subjects residing within this district.  Intel, 542 U.S. at 246–49.

#### 1.      Palantir Is an "Interested Person"

As a party to the German Patent Litigation and the complainant in the Criminal Investigation, Palantir qualifies as an "interested person" within the meaning of Section 1782. There is "[n]o doubt" that litigation parties, as Palantir is in the German Patent Litigation, are "included among, and may be the most common example of, the 'interested person.'"  Id. at 256; Palantir Techs., 415 F. Supp. 3d at 912 (determining Palantir is an "interested person" in the German Patent Litigation).  And as a complainant in the Criminal Investigation, Palantir has "comprehensive rights" to participate in the Criminal Investigation, including the right "to submit

evidence," making it an "interested person" within the meaning of Section 1782.  Kämpfer Decl.,

¶ 15; <u>Lazaridis v. Int'l Ctr. for Missing & Exploited Child., Inc.</u>, 760 F. Supp. 2d 109, 113 (D.D.C.

2011) ("[T]he phrase 'any interested person' is also interpreted broadly and may encompass those

who 'prompt an investigation,' *i.e.,* a complainant, who 'have a right to submit information' and

who 'possess a reasonable interest in obtaining [judicial] assistance.'" (quoting <u>Intel</u>, 542 U.S. at

256 (holding that a "complainant who trigger[ed] a European Commission investigation" was an

"interested person"))).

   Accordingly, Palantir is an "interested person" for purposes of Section 1782.

    2. <u>The Evidence Is for Use in a Foreign Proceeding</u>

   Palantir's Application satisfies the requirement that discovery be sought "for use in

a proceeding in a foreign or international tribunal."  There is no doubt that the German Patent

Litigation, which is before the German Court, constitutes a proceeding in a foreign tribunal.  <u>Intel</u>,

542 U.S. at 258.  The Criminal Investigation is also a qualifying foreign "proceeding."  28 U.S.C.

§ 1782(a) (district courts may order discovery "for use in a proceeding in a foreign or international

tribunal, including criminal investigations conducted before formal accusation").  Where, as here,

a criminal investigation is carried out by a public prosecutor, the criminal investigation falls

squarely within the scope of Section 1782.  <u>See</u> <u>Optimal Inv. Servs., S.A. v. Berlamont</u>, 773 F.3d

456, 461 & n.8 (2d Cir. 2014) (explaining that a "Swiss investigating magistrate or public

prosecutor is akin to the French *judges* [sic] *d'instruction*, which Judge Friendly held out as the

paradigmatic example of a 'tribunal' for the purposes of § 1782 (citations omitted)); Kämpfer

Decl., ¶ 12 (German public prosecutors are "obliged to conduct criminal investigations in an

objective and neutral way"); <u>see also</u> <u>In re Veiga</u>, 746 F. Supp. 2d 8, 18, 26 (D.D.C. 2010) (granting

application for discovery to be used in foreign criminal proceedings); <u>In re Eurasian Bank JSC</u>,

No. 19-mc-00568, 2020 WL 85226, at *1 (S.D.N.Y. Jan. 2, 2020) (granting Section 1782

application where "[p]etitioners intend to use the discovery in an ongoing Kazakhstani criminal investigation").

Meanwhile, the "for use" prong is satisfied because the requested discovery seeks evidence relevant to each of the German Proceedings.  See infra at 23; In re Veiga, 746 F. Supp. 2d at 18 (finding that applicants met their "de minimis burden" of demonstrating the requested discovery's relevance to the foreign proceedings).  As a party and criminal complainant, Palantir has the right to submit evidence obtained under Section 1782 to the court and public prosecutor involved in the German Proceedings.  Waldeck Decl., ¶ 43; Kämpfer Decl., ¶ 15.

      3.      The Discovery Subjects Are Located in the District of Columbia

Williams & Connolly is located, and Simon and Wohlgemuth reside, in this district, and so this factor too is satisfied.  See Livshiz Decl., ¶¶ 3–4.

**B.**      **The Intel Discretionary Factors Strongly Favor Granting Discovery**

In this case, each of the four discretionary factors outlined by the Supreme Court in Intel, 542 U.S. at 264–65, favors discovery.

      1.      The German Court and German Prosecutor May Not Compel Discovery of Evidence in the United States

The first Intel factor supports discovery because the German Court does not have jurisdiction over Respondents, and neither the German Court nor the public prosecutor can compel evidence in the United States.  In Intel, the Supreme Court instructed courts to consider whether "the person from whom discovery is sought is a participant in the foreign proceeding," reasoning that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  Id. at 264.  Thus, the focus of the first discretionary factor is on whether the foreign tribunal can compel production of the evidence sought.  See In re Veiga, 746 F. Supp. 2d at 23 (first Intel factor favored discovery where respondent was a non-party in the foreign

proceedings and was not subject to the foreign courts' jurisdiction, even though respondent had appeared in one of the foreign proceedings as counsel and represented that he could subject himself to the courts' jurisdiction).

      Here, the evidence Palantir seeks cannot be obtained in the German Proceedings for two reasons. The German Court is not authorized to compel the production of documents, nor can it compel foreign nationals—such as Respondents—to appear to provide testimony. Waldeck Decl., ¶¶ 40–41; Palantir Techs., 415 F. Supp. 3d at 913 ("Palantir has offered evidence that the German court cannot order the discovery sought here."); see also Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 597 (7th Cir. 2011) (reversing denial of Section 1782 discovery, and finding the German litigant could not "obtain even remotely comparable discovery by utilizing German procedures"); Kulzer GmbH v. Esschem, Inc., 390 F. App'x 88, 92 (3d Cir. 2010) ("German civil procedure does not offer a mechanism for general pretrial discovery comparable to that obtainable in the United States . . . ."). Nor can the German public prosecutor compel Respondents to produce evidence, as the evidence is located outside of Germany, and Williams & Connolly, Simon and Wohlgemuth have the right to refuse any cooperation in a criminal investigation. Kämpfer Decl., ¶¶ 21–23 (explaining that the German public prosecutor cannot compel the production of documents that Palantir seeks and that a request for mutual assistance "is not feasible in the present case"); see also Consorcio Minero S.A. v. Doe Run Res. Corp., No. 4:11-MC-583 CEJ, 2011 WL 4550200, at *3 (E.D. Mo. Sept. 30, 2011) (granting discovery and noting "the [Peruvian] Criminal Prosecutor does not have authority to compel compliance with discovery requests"). Simply put, the evidence "may be unobtainable absent § 1782(a) aid." Intel, 542 U.S. at 264. The first Intel factor therefore supports discovery.

2.      The German Court and German Prosecutor Are Not Hostile to Section 1782
        Discovery

In evaluating the second Intel factor, "it is not necessary to conduct an extensive examination of foreign law regarding the existence and extent of discover[y] in the forum country.  Instead, the court should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."  In re DiGiulian, No. 1:19-mc-132 (RC/RMM), 2020 WL 5253849, at *4 (D.D.C. Sept. 3, 2020) (citations and quotation marks omitted); see also Food Delivery Holding 12 S.a.r.l. v. DeWitty & Assocs. CHTD, 538 F. Supp. 3d 21, 29 (D.D.C. 2021) ("To prevail on this factor, the party resisting discovery must point to authoritative proof that the foreign tribunal would reject the evidence sought." (citations and quotation marks omitted)).

Here, there is no such authoritative proof.  To the contrary, the German Court overseeing the German Patent Litigation has already admitted and relied on evidence obtained in Section 1782 discovery.  In fact, this Application arises from the German Court's reliance on the discovery taken in the Section 1782 proceedings before the California and Colorado courts. Waldeck Decl., ¶ 47; see also Heraeus, 633 F.3d at 597 ("[T]here is nothing to suggest that the German court would be affronted by [the applicant's] recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence").  Similarly, there is nothing that would prevent the German public prosecutor from considering evidence that Palantir provides.  Kämpfer Decl., ¶¶ 24, 26; cf. In re Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais, No. C13-80261-MISC LHK (HRL), 2013 WL 12440994, at *2 (N.D. Cal. Nov. 21, 2013) ("[Applicant] maintains that the requested discovery will help the authorities in the foreign criminal investigations.  Moreover, it asserts that no policy in either France or the UK would cause

them to reject U.S. court assistance, and the Court is unaware of any."). Thus, there is every reason to believe that the German Court and public prosecutor would welcome the evidence sought here.

3.      The Application Has Not Been Filed to Circumvent Any Law or Rule

Nor is Palantir seeking to circumvent German prohibitions with respect to gathering evidence or any other policy. Indeed, German law in no way prohibits litigation parties or criminal complainants from seeking the assistance of U.S. courts in obtaining evidence, and the German Court has already used discovery obtained through Section 1782 in the very case at issue. Waldeck Decl., ¶¶ 42–44; Kämpfer Decl., ¶ 26. Thus, the third Intel factor favors granting the Application. See In re DiGiulian, 2020 WL 5253849, at *4 (granting application where "the Petition is not an attempt to improperly circumvent foreign procedural rules or evidentiary restrictions"); Matter of de Leon, No. 19-mc-0197 (TSC), 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020) ("[T]he evidence that the foreign court will receive and consider the evidence indicates that the request would not circumvent proof-gathering restrictions in that jurisdiction.").

4.      The Discovery Requests Are Not Unduly Intrusive or Burdensome

Finally, the requested discovery is focused, highly relevant, and necessary for a fair and just resolution of the German Proceedings. Courts in this district have interpreted the unduly burdensome inquiry under the fourth Intel factor "to encompass the relevance of the requested discovery to the foreign proceeding." In re DiGiulian, 314 F. Supp. 3d 1, 9 (D.D.C. 2018) (citations and quotation marks omitted); see also Matter of de Leon, 2020 WL 1047742, at *3 (granting discovery where "the requests are tailored to issues that, at this stage, appear relevant to the [foreign] proceedings"). Palantir's requests are narrowly tailored to capture evidence related to specific written and oral statements about the June 10 Meeting and related to the Williams & Connolly communications that Abramowitz has put at issue in Germany. The discovery is relevant to the upcoming July 13, 2022 hearing in Germany, at which the German Court is expected to test

the credibility of Abramowitz's defense, particularly his new position on the June 10 Meeting. <u>See</u> Waldeck Decl., ¶ 32. Further, Abramowitz has now defended his inconsistent statements in Germany by asserting his German counsel knew of his Delaware testimony because Williams & Connolly had so informed them. <u>See</u> Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief, ¶ 4. And he can be expected to also argue in Germany that his irreconcilable statements resulted from translation errors (as he has already done in the United States). <u>See</u> Delaware Motion in Limine, ¶ 4 n.1. The correspondence between Williams & Connolly and Hoffmann Eitle sought here will enable Palantir and the German Court to test the validity of these assertions.

* * *

Accordingly, the <u>Intel</u> factors strongly favor the Court exercising its discretion to grant Palantir's Application. Indeed, courts routinely permit discovery under Section 1782 when, as here, the applicant has satisfied the statutory requirements and the above factors weigh in favor of granting relief. <u>See, e.g.</u>, <u>Food Delivery Holding 12 S.a.r.l.</u>, 538 F. Supp. 3d at 29–31 (granting Section 1782 application because it satisfied all of the statutory requirements and the discretionary factors counseled in favor of ordering discovery).

**C.     The Discovery Is Not Protected By Privilege**

The documents and information Palantir seeks are not protected by attorney-client privilege or the work product doctrine, and should be produced. To the extent that the requested discovery includes documents and information which would ordinarily be protected by privilege, Abramowitz has waived privilege and the discovery is, in any event, subject to the crime-fraud exception.

1.     <u>Abramowitz Has Waived Privilege</u>

As he has done at other points throughout the German Patent Litigation, Abramowitz has intentionally waived attorney-client and work product privileges by selectively

disclosing evidence for tactical purposes.  See California Court Sept. 11, 2020 Order; California Court Nov. 10, 2020 Order; California Court Apr. 1, 2022 Order at 2 ("[T]here is a history in this case of selective waiver."); California Court Apr. 18, 2022 Order.  This time, Abramowitz has waived privilege over correspondence concerning the accuracy of his representations about the June 10 Meeting in at least three ways.  First, he did so when he tried to justify submitting filings in Germany that contradicted his sworn U.S. testimony by testifying in Germany that "[a]fter consultation with my U.S. attorneys, I have approved the [German] pleadings as being correct. The US lawyers consulted with the German lawyers on the content of the pleadings.  I relied on my US lawyers, as they know the facts."  Hearing Minutes at 4 (emphasis added).  To assess this purported defense, one needs the full context of the "consultation" and other communications with and among Abramowitz's U.S. and German attorneys on the subject matter of the supposed reliance; Abramowitz cannot reveal aspects of privileged communications that are to his tactical advantage without waiving privilege over other communications on the same subject.  Second, Abramowitz went further in the Delaware Action, where he suggested that any mistakes in his German filings were the result of faulty translations of the draft German filings, while requesting that the Delaware court exclude from an upcoming trial any reference to the German Patent Litigation.  Delaware Motion in Limine, ¶ 4 & n.1.  It is reasonable to expect Abramowitz will make this same argument in Germany to defend his misstatements, and Palantir should be able to test those assertions.  Finally, third, Abramowitz's March 28, 2022 submission to the German Court again put otherwise privileged correspondence at issue by claiming that Williams & Connolly did inform Abramowitz's German counsel in writing that Abramowitz "had already testified to having no recollection of the meeting," and that Abramowitz's German counsel's statement to the contrary during the Evidentiary Hearing was "unintentionally incorrect."  See

Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief, ¶ 4.  This submission references supposed written communications between Abramowitz's U.S. and German attorneys to defend Abramowitz's inconsistent statements, but it does not attach these communications or directly cite from them; it also asserts that "there was no information to the contrary at any time from the U.S. attorneys or [Abramowitz]."  Id.  Once again, Palantir is entitled to test the veracity of these statements.

Here, as before, Abramowitz cannot have his cake and eat it too.  He cannot rely on privilege to prevent Palantir from seeing information about the very representations he has made in an attempted rebuttal of a factual allegation central to Palantir's claims.  Neither Palantir nor the German Court can evaluate Abramowitz's arguments without reviewing the referenced alleged communications and draft filings, as well as the other communications among Williams & Connolly, Abramowitz, and German counsel on this subject.  See California Court Sept. 11, 2020 Order at 4 ("In fairness, Palantir should be privy to any written communications on the same subject . . . ."); California Court Nov. 10, 2020 Order at 3 ("Federal law is not so impotent as to allow such blatant gamesmanship and conduct inconsistent with the purpose behind the privilege."); California Court Apr. 1, 2022 Order at 2 ("[T]here is a history in this case of [Abramowitz] selectively waiving the privilege to his own advantage.").  To the extent these documents otherwise would be privileged, therefore, Abramowitz has put them at issue, and they should be produced.  See In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982) ("When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter . . . . Courts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege."); Intex Recreation Corp. v. Metalast, S.A., No.

26

CIVA 01-1213 JDB, 2005 WL 5099032, at *4 (D.D.C. Mar. 2, 2005) ("There is no question that the attorney-client privilege is waived when a client asserts reliance on the advice of counsel as an affirmative defense, because the client has then made a conscious decision to inject as an issue in the litigation the advice of counsel."); Recycling Sols., Inc. v. District of Columbia, 175 F.R.D. 407, 408 (D.D.C. 1997) ("[P]rivilege cannot be used both as a sword and as a shield."); 6 MOORE'S FEDERAL PRACTICE § 26.47 (Matthew Bender 3d ed.) ("[A] party who asserts a claim as a sword should not also be permitted to assert a privilege as a shield to deflect questions regarding the claim."); see also Conkling v. Turner, 883 F.2d 431, 425 (5th Cir. 1989) (where litigant claimed he "did not know" the falsity of certain misrepresentations at issue "until informed by [his attorney]," he had "injected [the issue] into [the] litigation" and depositions of the attorneys were warranted on that subject).

2.     The Crime Fraud Exception Warrants Discovery

In addition, "a privileged relationship" cannot be "used to further a crime, fraud, or other fundamental misconduct." In re Sealed Case, 676 F.2d at 807; see also Recycling Sols., 175 F.R.D. at 409 (same, and noting that a "fraud upon some other court" could form basis for the crime-fraud exception). To invoke the crime-fraud exception, a litigant must put forth "evidence that if believed by the trier of fact would establish" (i) "the elements of an ongoing or imminent crime or fraud," and (ii) "some relationship" between the communications and/or documents at issue and the crime or fraud. In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985); see also In re Int'l Min. Res. B.V., No. 14-mc-340(GK), 2015 WL 4555248, at *3 (D.D.C. July 28, 2015).

Here, Palantir puts forth far more. At issue here is both a crime and fraud, or, more precisely, a crime that involves fraud. The German Court has already issued an order "conclud[ing]" that Abramowitz "attempted litigation fraud" to "induce the Chamber to make a decision in his favour (dismissal of the action)" by authorizing his attorneys to submit briefs in

27

which he claimed to have a recollection of the June 10 Meeting, despite testifying under oath in the Delaware Action that he had no recollection of that meeting.  German Court's Criminal Complaint at 2–3.  Nor is there any doubt as to the role of Williams & Connolly in Abramowitz's misconduct, as Abramowitz himself testified that he relied on Williams & Connolly to prepare the offending submissions and to confirm the accuracy of the facts contained therein.  See In re Sealed Case, 754 F.2d at 400 (affirming application of crime-fraud exception where alleged crimes were committed "with the knowledge and participation of [criminal investigation target's] legal department"); see also Hearing Minutes at 4; Palantir's Criminal Complaint at 12–14.

Importantly, Palantir's requested discovery is narrowly tailored to the very documents relevant to the alleged crime/fraud: the paragraphs about the June 10 Meeting in drafts of the pleadings Abramowitz submitted in Germany, which Abramowitz admits he reviewed with assistance from Williams & Connolly, and correspondence concerning the June 10 Meeting.  See Livshiz Decl., Ex. 1 (Schedule A to Subpoena), at 4–5.  Thus, there is more than "some relationship" between the communications and/or documents at issue and the crime or fraud; what Palantir seeks are the very documents leading to Abramowitz's attempted litigation fraud and needed to evaluate his ever-shifting reasons why the German Court was wrong to conclude that he committed a crime.  In re Sealed Case, 754 F.2d at 399; see also Int'l Min. Res. B.V., 2015 WL 4555248, at *3 ("In order to overcome an otherwise valid privilege with the crime-fraud exception, the party seeking discovery must put forth more than mere allegations of wrongdoing." (citations and quotation marks omitted)).

This is thus the unusual case in which the very court that Abramowitz sought to deceive has discovered his attempted deception, concluded that he attempted the crime of litigation fraud, and taken the extraordinary step of filing a criminal complaint regarding his conduct, and

28

Abramowitz himself has claimed that he acted with the assistance of Williams & Connolly. German Court's Criminal Complaint at 2; Kämpfer Decl., ¶ 13.  Palantir's Application simply asks this Court to apply the privilege exception that results when a court so finds prima facie evidence of a crime or fraud that has been perpetrated with the assistance of counsel.  See Duttle v. Bandler & Kass, 127 F.R.D. 46, 53–54 (S.D.N.Y. 1989) (considering fact that company's principals were convicted of fraud in Germany as evidence supporting the application of crime-fraud exception to company's communications with attorneys).

Accordingly, privilege does not prevent the production of the discovery Palantir seeks, which should be granted for the reasons set forth in this Application.

## V.       CONCLUSION

For the reasons set forth above, Palantir respectfully requests that this Court (i) grant this Application for Discovery Pursuant to 28 U.S.C. § 1782 with respect to the documents and testimony requested herein and in Exhibits 1, 2 and 3 to the Livshiz Declaration, (ii) order Williams & Connolly LLP to produce said documents within 14 days of service of the subpoena, (iii) order Barry S. Simon, Esq. and Stephen L. Wohlgemuth, Esq. to provide deposition testimony prior to July 13, 2022, and (iv) grant such other and further relief as the Court deems just and proper.

May 4, 2022

FRESHFIELDS BRUCKHAUS
DERINGER US LLP

By:     */s/ David Y. Livshiz*

David Y. Livshiz
Olivia P. Greene*
Wang Jae Rhee*
Robert G. M. Barton*
Matthew S. Rublin*
david.livshiz@freshfields.com
olivia.greene@freshfields.com
wangjae.rhee@freshfields.com
robert.barton@freshfields.com
matthew.rublin@freshfields.com

601 Lexington Avenue, 31st Floor
New York, New York 10022
Tel: (212) 277-4000
Fax: (212) 277-4001

*Pro hac vice* applications forthcoming

*Attorneys for Applicant*
*Palantir Technologies Inc.*